# CIRCUIT COURT OF THE CITY OF NORFOLK

Southern Bank
and Trust Company

v.

Earl C. Woodhouse, Jr.,
and Sandra D. Woodhouse

May 26, 2016

Case Nos. CL15009939-00, CL15009939-01

BY JUDGE MARY JANE HALL

This matter comes before the Court on Plaintiff Southern Bank and Trust Company's Demurrer to the Counterclaim filed by Defendants Earl C. Woodhouse, Jr., and Sandra D. Woodhouse. For the reasons that follow, the Demurrer is sustained in part and overruled in part.

## Background

Defendants obtained thirteen loans from the Bank of the Commonwealth between 2008 and 2010. Twelve of the loans were secured by deeds of trust for various real property owned by Defendants located in the cities of

Chesapeake and Norfolk. Each deed of trust named Richard J. Tavss and Earl J. Woodard as trustees.

Following the failure of the Bank of the Commonwealth in 2011, Plaintiff Southern Bank and Trust Company acquired all of its assets, including the notes signed by Defendants. Plaintiff executed deeds of appointment on September 18, 2014, November 12, 2014, and January 2, 2015, appointing Stewart Trustee Services, L.L.C., as substitute trustee under each of the deeds of trust. (*See* Counterclaim Ex. 2.)

Defendants defaulted on their loan obligations, and Stewart timely mailed foreclosure notices to Defendants pursuant to Virginia Code § 55-59.1(A) stating that the properties listed as security for the loans would be sold. Subsequent to the date on which Stewart mailed the foreclosure notices, the Deeds of Appointment appointing Stewart as substitute trustee were recorded at the offices of the appropriate clerks of court. Stewart held foreclosure sales for each property. Plaintiff alleges that Earl C. Woodhouse, Jr. attended the foreclosure sales held in Chesapeake.

Plaintiff initiated this action to recover the amounts still due under the loans after the foreclosure sales. Defendants filed a Counterclaim, alleging that the foreclosures were invalid and asserting causes of action for actual and constructive fraud and breach of an implied covenant of good faith and fair dealing. Plaintiff has demurred to the Counterclaim. The Court addresses each count in turn.

## Standard of Review

"A demurrer tests the legal sufficiency of a motion for judgment," *Harris v. Kreutzer,* 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006), and "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *Cox Cable Hampton Rds., Inc. v. City of Norfolk,* 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991) (citing *Palumbo v. Bennett,* 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991)). A demurrer does not, however, "admit the correctness of the pleader's conclusions of law." *Lewis v. Kei,* 281 Va. 715, 723, 708 S.E.2d 884, 890 (2011) (quoting *Dodge v. Trustees of Randolph-Macon Woman's College,* 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008)).

In reviewing a demurrer, courts must "determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Dunn, McCormack & MacPherson v. Connolly,* 281 Va. 553, 557, 708 S.E.2d 867, 869 (2011) (quoting *Abi-Najm v. Concord Condo., L.L.C.,* 280 Va. 350, 356-57, 699 S.E.2d 483, 486 (2010)). The court "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are part of the pleadings." *Schaecher v. Bouffault,* 772 S.E.2d 589, 602 (Va. 2015) (citing *Ward's Equip., Inc. v. New Holland N. Am., Inc.,* 254 Va. 379, 381-84, 493 S.E.2d 516, 518-20

(1997)). Further, "mere conclusory statement[s]," without adequate factual support, "[do] not satisfy the pleading requirement of alleging facts upon which relief can be granted" and are "insufficient to withstand a demurrer." *Dean v. Dearing,* 263 Va. 485, 490, 561 S.E.2d 686, 690 (2002).

## Discussion

### A. *Count 1: Invalid Foreclosure; Whether the Deeds of Trust Required that Substitute Trustee be an Individual with a Residence*

Defendants first contend that the deeds of trust mandated that only individuals with residences could be appointed as a substitute trustee. They argue that Stewart, a limited liability company, was ineligible to serve as substitute trustee and that its appointment was ineffective. Defendants therefore conclude that the original trustees, Tavss and Woodard, remained trustees, and that Stewart had no authority to conduct the challenged foreclosures.

Defendants' argument centers on the following passage from the deeds of trust:

> Lender, at Lender's option . . . may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which *he or she resides . . . .*

(Answer & Countercl. Ex. 1 at 8 (emphasis added).) Defendants claim that the words "he or she" and "resides" limit who may serve as substitute trustee to individuals with residences. A limited liability company would be ineligible to serve as substitute trustee under this interpretation because it is neither a "he or she," nor does it have a "residence."

In response, Plaintiff contends that the cited language does not expressly prohibit corporate trustees, and argues that such an interpretation conflicts with the governing statutes. Virginia Code § 55-58.1(A) provides in pertinent part that "[n]o corporation, *limited liability company* . . . or other entity may be named or act as the trustee . . . of a deed of trust . . . unless it is organized under the laws of the Commonwealth or of the United States of America." Va. Code § 55-58.1(A) (emphasis added). Code § 55-58.1(B) requires that deeds of trust specify "the full residence or *business address* of the trustee or trustees named therein." *Id.* § 55-58.1(B) (emphasis added).

These two statutes clearly contemplate that limited liability companies without residences may serve as substitute trustees under deeds of trust.

Finally, Code § 55-59(9) provides that a party secured by a deed of trust has the right to appoint a substitute trustee of its own choosing "regardless of whether such right and power is expressly granted in such deed of trust." *Id.* § 55-59(9). Had the Woodhouse deeds of trust been silent on the right to appoint a substitute trustee, Plaintiff argues, it would nonetheless have had the right by statute to appoint a limited liability company of its choosing. It argues by implication that any language in the deeds of trust attempting to restrict that right should not be enforced.

The Court cannot conclude from the lazy use of personal pronouns in the original deed of trust ("he or she" rather than "he, she, or it") that the original parties unambiguously intended to restrict the lender to selecting only individuals to serve as trustees. Likewise, the use of the term "resides," rather than a broader reference to an address or location, is as consistent with imprecise drafting as with a clear intent to restrict an otherwise broad right to select a substitute trustee given to a lender by statute. The Court notes that the original deed of trust, which did name two individuals as trustees, recited downtown Norfolk business addresses[1] and not residence addresses for each. This undermines any conclusion about the paramount importance of identifying trustees' residence addresses. Nothing in the contract other than those two references (the personal pronoun and the word "resides") suggests that the parties intended to limit the lender to using individual persons rather than corporate trustees. No reason has been advanced as to why the parties would have had such an intent.

Possibly even an unambiguous restriction of eligibility to serve as a substitute trustee to individuals would be unenforceable as to subsequent substitute trustees because of the broad statutory grant of approval to secured parties to select any qualified trustee to serve; but in the case at bar, the Court finds no such unambiguous restriction.

In the absence of any clear language in the deeds of trust indicating that the parties intended otherwise, the Court concludes that the deeds of trust permitted Plaintiff to appoint a limited liability company to serve as substitute trustee, notwithstanding the "he or she resides" clause. Accordingly, the Demurrer to Count 1 is sustained without leave to amend.

B. *Count 2: Invalid Foreclosure; Whether Defendants Received Adequate Notice of Foreclosure*

In Count 2, Defendants attack the adequacy of the written notice of the foreclosure sales that they received from Stewart prior to the sale,

---

[1] The Court recognizes the address provided for Mr. Tavss, which is directly across the street from the Norfolk Circuit Court, and for Mr. Woodard, which is in the commercial building formerly occupied by the Bank of the Commonwealth.

first because Stewart's appointment as substitute trustee was invalid, or alternatively because Stewart's appointment was not yet effective when notices were mailed to Defendants. The first basis for this argument, that Stewart's appointment as substitute trustee was invalid, has been resolved against Defendants.

In the alternative, Defendants assert that Stewart's appointment did not take effect until the deeds of appointment were recorded. Defendants argue that Stewart sent each of the foreclosure notices *before* the recordation of the deeds of appointment and that Stewart was, thus, not substitute trustee when it sent the notices, rendering the foreclosures *ultra vires.*

In accordance with Code § 55-59.1(A), the deeds of trust require the lender, trustee, or substitute trustee to mail written notice of the time and place of any proposed foreclosure sale to Defendants within fourteen days of the sale. (Countercl. Ex. 1 at 7-8.) The deeds of trust authorize Plaintiff to "appoint a successor Trustee . . . by an instrument executed and acknowledged by Lender *and recorded* in the office in the jurisdiction where this Deed of Trust has been recorded." (*Id.* at 8 (emphasis added).)

This language contemplates that instruments appointing a substitute trustee under the deeds of trust must be recorded in the appropriate clerk's office at some point in time. It does not, however, establish recordation as a precondition to the effectiveness of an appointment. The Code of Virginia likewise does not require that a deed of appointment be recorded before the appointment of a substitute trustee becomes effective. If a written instrument were intended to take effect on a date later than its execution, it would normally say so. The Court thus concludes that the appointment of Stewart as substitute trustee became effective upon the execution of the Deed of Appointment. Consequently, Stewart was the properly appointed substitute trustee when it mailed the foreclosure notices to Defendants. As there were no other grounds asserted for inadequacy, the Court concludes that Defendants received adequate notice of the foreclosures pursuant to Code § 55-59.1(A).

Accordingly, the Court holds that Count 2 does not state a claim for which relief can be granted. Therefore, the Demurrer to Count 2 is sustained without leave to amend.

## C. *Counts 4 and 5: Actual and Constructive Fraud*

In Counts 4 and 5, Defendants allege that Plaintiff knowingly and intentionally misrepresented the amount of money that they were required to pay to satisfy Loan 6023746 by including improper insurance charges, overstated interest amounts, and overstated attorney's fees and costs in the payoff amount. Defendants claim that they relied upon this misrepresentation to their detriment and, consequently, suffered emotional distress and other injuries stemming from their loss of title to the property used to secure the loan.

Plaintiff asserts that Counts 4 and 5 allege only a contractual duty, the breach of which is actionable in tort pursuant to the source of duty rule. In the alternative, Plaintiff argues that Defendants have failed to plead fraud with sufficient particularity.

In Virginia, "[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." *Filak v. George,* 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) (citations omitted). To recover in tort for fraud, the moving party must establish that the duty breached was a common law or statutory duty, and "not one existing between the parties solely by virtue of the contract." *Dunn Constr. Co. v. Cloney,* 278 Va. 260, 267, 682 S.E.2d 943, 946 (2009) (quoting *Foreign Mission Bd. v. Wade,* 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)). Therefore, a cause of action for fraud exists only if the alleged fraud involves the breach of a common law or statutory duty which exists independently of any contract between the parties; if the duty at issue was "assumed only by agreement, rather than . . . imposed by law," then the claim for losses is only actionable in contract. *Filak,* 267 Va. at 618, 594 S.E.2d at 613 (citing *SensenbRenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988)).

In the case at bar, Defendants' fraud claims are premised upon their allegation that Plaintiff intentionally and knowingly misrepresented the amount of money necessary to satisfy Loan 6023746. This alleged fraud implicates Plaintiff's statutory duty to provide an accurate payoff statement pursuant to Code §§ 6.2-418(A), (B). The parties appear to agree that Plaintiff's duty to provide an accurate payoff statement to Defendants is contractual in nature. (Pl.'s Br. in Supp. of Dem. at 7; Def.'s Sur-Rebuttal in Opp. to Dem. at 8, 10.) The deeds of trust are silent on this subject, and the parties have not pointed out to the Court what contractual provision contains this requirement. The duty is, however, imposed by Code §§ 6.2-418(A), (B), and would thus exist even if not contained within the parties' contract. As this duty is imposed by statute, Plaintiff did not assume it solely by virtue of the parties' contracts. The Court therefore holds that the source of duty rule does not bar Defendants' claims in Counts 4 and 5.

The Court further concludes that Counts 4 and 5 allege the elements of actual and constructive fraud with the necessary particularity. To establish a cause of action for actual fraud, a plaintiff must prove the following elements by clear and convincing evidence: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Dev. Co. v. Bershader,* 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999) (citing *Bryant v. Peckinpaugh,* 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991); *Winn v. Aleda Constr. Co.,* 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984)). Alternatively, to plead a cause of action for

constructive fraud, the plaintiff must show that the false representation was "made innocently or negligently" rather than intentionally and knowingly. *Evaluation Research Corp. v. Alequin,* 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) (citing *Nationwide Mut. Ins. Co. v. Hargraves,* 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); *Kitchen v. Throckmorton,* 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982)).

Fraud must be pleaded with particularity and established by clear and convincing evidence. *Mortarino v. Consultant Eng'g Servs.,* 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) ("[W]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defen[se] accordingly, and since [fraud] must be clearly proved it must be distinctly stated.") (quoting *Ciarochi v. Ciarochi,* 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952)). Therefore, "[g]eneralized, nonspecific allegations . . . are insufficient to state a valid claim of fraud." *Ward's Equip., Inc. v. New Holland N. Am.,* 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997) (citing *Tuscarora, Inc. v. B.V.A. Credit Corp.,* 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978)).

Here, the Counterclaim states that the payoff statement for Loan 6023746 misrepresented the amount necessary to satisfy the loan by including improper and overstated charges in the payoff amount. (Countercl. ¶¶ 29-30.) It further alleges that such misrepresentations "were knowingly and intentionally false when made" by Plaintiff. (*Id.* ¶ 31.) Moreover, the Counterclaim states that the Woodhouses relied upon the alleged misrepresentations to their detriment because, as they believed the overstated figure to be the correct payoff amount, "they did not pay the lesser amount that was actually required to pay off the loan, and, consequently, were not able to prevent the foreclosure on the property" used as security for the loan. (*Id.* ¶ 32.)

All of the elements of actual and constructive fraud have been pleaded with sufficient particularity and specificity to permit Plaintiff to shape its defense to the Counterclaim. Accordingly, the Demurrer to Counts 4 and 5 is overruled.

### D. *Count 7: Breach of an Implied Covenant of Good Faith and Fair Dealing*

Defendants argue in Count 7 that Plaintiff breached an implied covenant of good faith and fair dealing contained within each of the deeds of trust. The allegations about precisely what Plaintiff did to breach that implied covenant are broad: "The facts set forth in Counts One, Two, Three, Four, Five and Six of this counterclaim constituted breaches by Southern Bank of the covenant of good faith and fair dealing incorporated into the notes and the deeds of trusts (loan documents) under common law." (Countercl. ¶ 130.)

Plaintiff contends that Virginia law does not recognize a cause of action for breach of this covenant in cases that are not governed by the Uniform

Commercial Code. In opposition, Defendants have cited multiple cases in which trial courts overruled demurrers to claims for breach of the implied covenant of good faith and fair dealing; however, in all of the cited cases, the Uniform Commercial Code governed the dispute. This is significant because the UCC, as codified in the Code of Virginia, provides that "[e]very contract . . . within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Va. Code § 8.1A-304.

By contrast, this provision is inapplicable to the deeds of trust at issue in the case at bar because the creation and transfer of interests in real property are not governed by the UCC. *See* Va. Code § 8.1A-102 (Title 8.1A only "applies to the extent that it is governed by another title of the Uniform Commercial Code); Va. Code § 8.9A-109(d)(11) ("This title does not apply to . . . the creation of a transfer of an interest in or lien on real property."). Moreover, Count 7 specifically alleges a breach of an implied covenant of good faith and fair dealing "under common law," rather than the obligation prescribed by Va. Code § 8.1A-304. (Countercl. ¶ 130.) The decisions cited by Defendants are, therefore, distinguishable from the instant case.

Moreover, the Court notes that other Virginia courts have sustained demurrers to similar claims for breach of an implied covenant of good faith and fair dealing in contracts to which the UCC does not apply. *See, e.g., Tedders v. Bank of Am., N.A.*, No. CL14-114, at *4-5 (12th Jud. Cir. Feb. 4, 2015) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996) (concluding that a party's failure to act in good faith does not constitute an independent tort under Virginia law where the UCC does not apply)); *Emanuel v. Bank of Am., N.A.*, 89 Va. Cir. 272, 273 (Richmond Cnty. 2014) ("[T]here is no Virginia authority that a cause of action of good faith and fair dealing exists."); *Carr v. Federal Nat'l Mortg. Ass'n*, No. CL2012-391, at *6 (Hopewell City Cir. Ct. Oct. 8, 2013) ("It is well-settled that Virginia law does not recognize an independent cause of action for breach of the implied warranty of good faith and fair dealing"); *Hershberger v. Bank of Am., N.A.*, No. CL130270, at *3 (Caroline Cnty. Cir. Ct. Sept. 13, 2013) (holding that "a separate action for Breach of Implied Covenant of [G]ood Faith and Fair Dealing does not exist" because "all of the rights and remedies are contained within the" loan agreement); *Waters v. CitiMortgage, Inc.*, No. CL12-2210, at *8 (12th Jud. Cir. Jan. 14, 2013); *Allaun v. Scott*, 59 Va. Cir. 461, 465 (Norfolk City 2002) ("There is no support for . . . a duty [of good faith and fair dealing], nor an independent tort based on its breach, at common law.");

*Will & Cosby Assocs. v. Salomonsky*, 48 Va. Cir. 500, 504-05 (Richmond City 1999) (citing *Ward's Equip., Inc.*, 254 Va. at 385, 493 S.E.2d at 520).

In this case, Defendants' good faith and fair dealing claim centers upon Plaintiff's actions in appointing Stewart as substitute trustee (Count 1), failing to provide Defendants with proper notice of the foreclosure upon Loan Number 6023746 (Count 2), conducting an invalid foreclosure on Loan 6023746 and then providing negative and false reports regarding Defendants to credit agencies (Count 3), providing inaccurate payoff statements for Loans 3502368 and 6023746 containing overcharges and improper fees (Counts 4 and 5), and overcharging Defendants for attorneys' fees in connection with the payoff of one of the loans (Count 6).

The Court has already determined that Plaintiff's appointment of Stewart as substitute trustee was permissible under the deeds of trust and that Defendants received notice of the foreclosure sales from the properly-appointed substitute trustees, which negates the conclusion that those actions, described in Counts 1 and 2, violated any covenant of good faith and fair dealing. As the bases alleged in Counts 1 and 2 do not establish that Plaintiff violated the implied covenant, Plaintiff's claim for compensatory damages in Count 3 is similarly unsupportive of its good faith and fair dealing claim. Moreover, Plaintiff's rights to appoint a substitute trustee and foreclose upon the loans in question, as well as the attorneys' fee controversy in Count 6, are all governed by express contractual terms. The express terms of the contract and not an implied covenant of good faith and fair dealing must apply to the actions described in those four counts. "When parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc.*, 254 Va. at 385, 493 S.E.2d at 520.

Lastly, as already noted, Plaintiff's obligation to provide Defendants with an accurate payoff statement for Loan Number 6023746, the subject of Counts 4 and 5, is a statutory duty. Counts 4 and 5 are tort claims, and any implied covenant of good faith and fair dealing does not apply to torts.

The Court concludes that Virginia does not recognize an independent action for breach of the implied covenant in cases that are not governed by the UCC, including this one. Alternatively, even if such claims were actionable in Virginia, the Court would nonetheless conclude that this Counterclaim fails to state a cause of action for breach of the implied covenant of good faith and fair dealing pursuant to the Supreme Court's decision in *Ward's Equipment* for the reasons addressed in the discussion of each count, above. Accordingly, the Demurrer to Count 7 is sustained without leave to amend.

*Waiver*

Plaintiff also argues that the Court should dismiss this action because Defendants waived their right to challenge the validity of the foreclosures. Plaintiff asserts that Defendants received timely notice of each foreclosure sale and that Mr. Woodhouse was present at several of the sales, yet Defendants did not object to the sales prior to their consummation. As this argument raises an affirmative defense and does not attack the sufficiency of the allegations pleaded in the Counterclaim, the Court declines to address this issue in ruling upon Plaintiff's Demurrer.

*Conclusion*

Plaintiff's Demurrer to Counts 1, 2 and 7 of the Counterclaim is sustained without leave to amend. The Demurrer to Counts 4 and 5 are overruled.